UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

NORMAN RONNIE HANSEN, JR.,    )
    )
       Plaintiff,    )
    )
      v.    )    No. 1:24-cv-00278-JAW
    )
HOMESITE INSURANCE    )
COMPANY OF THE MIDWEST,    )
et al.,    )
    )
       Defendants.    )

**ORDER ON MOTION FOR PRELIMINARY INJUNCTION**

A pro se plaintiff asks the court to issue a preliminary injunction and thereby award him money damages against his insurance companies to pay a claim he maintains is insured and the insurers have wrongfully failed to pay. Because a court may not enjoin a party to pay money damages, the court dismisses without prejudice the plaintiff's motion for preliminary injunction.

## I.  PROCEDURAL HISTORY

On August 2, 2024, Norman Ronnie Hansen, Jr., a citizen of the state of Maine, filed a civil complaint in this Court against Homesite Insurance Company of the Midwest (Homesite), a business incorporated in the state of Delaware and with a principal place of business in the state of Wisconsin; American Family Insurance Claims Services (AFICS), a business incorporated and with a principal place of business in the state of Wisconsin; American Family Mutual Insurance Company S.I. (AFMIC), a business incorporated and with a principal place of business in the state

of Wisconsin.[1,2] *The Parties to This Compl.* at 1-2 (ECF No. 1) (*Compl.*); *Compl. for a Civil Case* at 5 (ECF No. 21) (*Corrected Compl.*). In his complaint, Mr. Hansen alleges that he "had Geico auto insurance and got my homeowners insurance through Geico in a 'bundle'" for his home in Bangor, Maine. *Corrected Compl.* at 5-6. After his home experienced significant damage in July 2023, he filed a claim with "Homesite Insurance Company of the Midwest, Geico's affiliate with whom they 'bundled' the home and automobile policy," and alleges Homesite has declined to approve, reject, or otherwise pay his claim to date. *Corrected Compl.* at 6-8.

Homesite, AFMIC, and AFICS jointly moved for a more definite statement on September 18, 2024, asking the Court to order Mr. Hansen to submit an amended complaint with enumerated paragraphs and clarified allegations as to each respective Defendant so moving. *Defs. Homesite Ins. Co. of the Midwest, Am. Fam. Ins. Claims Servs., and Am. Fam. Mut. Ins. Co., S.I.'s Joint Mot. for More Definite Statement* (ECF No. 16). Mr. Hansen responded to the motion for more definite statement on October 8 and 9, 2024, submitting revised allegations and eighty-five attachments in support. *Answer to Defs. Homesite Ins. Co. of the Midwest, Am. Fam. Ins. Claims Servs., and*

---

[1]    Mr. Hansen originally named Berkshire Hathaway Inc. and Government Employees Insurance Company (GEICO) as defendants; *see Compl. for a Civ. Case* at 5 (ECF No. 21) (*Corrected Compl.*); however, on July 7, 2025, the Court granted motions to dismiss from each. *Order on Mot. to Dismiss* at 60 (ECF No. 53). The Court's recitation in this order has omitted mention of either Berkshire Hathaway or GEICO since they are no longer party defendants.

[2]    Mr. Hansen's original complaint named only Homesite Insurance Company of the Midwest and American Family Insurance Claims Services as Defendants. *Compl.* at 1. However, in correspondence with the Court, Plaintiff recognized this filing was in error and filed a corrected complaint naming all Defendants. *Correspondence* (ECF No. 20); *Corrected Compl.* at 5. The United States Magistrate Judge issued a procedural order on September 19, 2024, recognizing this corrected complaint as "the operative pleading." *Procedural Order* (ECF No. 19).

*Am. Fam. Mut. Ins. Co. S.I.'s Joint Mot. for More Defin[i]tive Statement* (ECF No. 23);

*Additional Attachs.* (ECF No. 24); *Additional Attachs.* (ECF No. 25); *Additional*

*Attachs.* (ECF No. 26).  Homesite, AFMIC, and AFICS jointly replied on October 22,

2024.  *Defs. Homesite Ins. Co. of the Midwest, Am. Family Ins. Claims Servs., and*

*Am. Fam. Mut. Ins. Co., S.I.'s Reply in Support of Joint Mot. for More Definite*

*Statement* (ECF No. 27).

On November 14, 2024, the United States Magistrate Judge denied the motion

for a more definite statement, concluding "Plaintiff's subsequent filings provide the

Moving Parties with sufficient detail regarding the bases of his claims," deeming

"Plaintiff's response to the motion to be Plaintiff's operative pleading," and directing

the Court Clerk "to docket the response (ECF No. 23) as Plaintiff's amended

complaint." *Order on Mot. for More Definitive Statement* at 3-4 (ECF No. 29).  The

Clerk of Court entered Mr. Hansen's filing on the docket as an amended complaint

that same day.  *Answer to Defs. Homesite Ins. Co. of the Midwest, Am. Fam. Ins.*

*Claims Servs., and Am. Fam. Mut. Ins. Co. S.I.'s Joint Mot. for More Defin[i]tive*

*Statement* (ECF No. 30) (*Am. Compl.*).

On September 2, 2025, Mr. Hansen filed a motion for preliminary injunction

against Homesite, AFICS, and AFMIC.  *Pl. Norman Ronnie Hansen Jr. Pet. for Inj.*

*Relief from Irreparable Harm* (ECF No. 61) (*Pl.'s Mot.*).  On September 23, 2025,

Homesite, AFICS, and AFMIC filed their opposition to Mr. Hansen's motion for

preliminary injunction.  *Defs. Homesite Ins. Co. of the Midwest, Am. Family Ins.*

*Claims Servs., and Am. Family Mut. Ins. Co., S.I.'s Jt. Opp'n to Pl.'s Pet. for Inj. Relief* (ECF No. 70) (*Defs.' Opp'n*).

## II.    FACTUAL BACKGROUND [3]

Mr. Hansen purchased a home located at 225 Forest Avenue in Bangor, Maine (the Property) on August 24, 2022, and resided there until August 4, 2023. *Corrected Compl.* at 5-6; *Am. Compl.* at 2. He reports that he obtained a homeowners insurance policy through GEICO in a bundle combining his automobile and home insurance; the policy, number 39352661, was through Homesite and covered the Property from September 7, 2022 through September 7, 2023. *Am. Compl.* at 2.

Mr. Hansen traveled to Greece on July 23, 2023. *Id.* On the weekend of Saturday, July 29, 2023 through Monday, July 31, 2023, there were severe rainstorms in Bangor, Maine. *Id.* at 2-3. Sandi Richardson and her son, who were looking after Mr. Hansen's home while he was in Greece, called to inform the Plaintiff that "water was coming into the house, running down the walls and stairs, through the ceilings, soaking the carpets and pads, and there w[ere] a couple inches of water

---

[3]    As explained, the Magistrate Judge deemed Mr. Hansen's response to the motion for a more definite statement to be the operative pleading and directed the Clerk of Court to docket the response as the Plaintiff's amended complaint. *See Order on Mot. for More Definitive Statement* at 3-4; *see also Am. Compl.* Typically, once a complaint is amended, any earlier versions of the complaint cease to exist for the purposes of subsequent motions. *See, e.g.*, *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008) ("An amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the earlier complaint is a dead letter and no longer performs any function in the case"). Here, though, Mr. Hansen drafted and submitted his motion not as an amended complaint, but as a more definite statement to supplement his corrected complaint, and his filing thus references the allegations of his corrected complaint in his attempt to expand upon them. The Magistrate Judge logically treated Mr. Hansen's response as an amended complaint; however, in fairness to the Plaintiff, who did not move for his response to supersede the corrected complaint, the Court incorporates facts from his corrected complaint where they provide necessary context for the amended complaint's factual allegations.

in the living room and water in the basement." *Id.* at 3. After the storms, Ms. Richardson discovered the source of the water; a roof hatch in the attic was open. *Id.* Ms. Richardson closed and secured the roof hatch, and tried to clean up the water. *Id.*

On August 2, 2023, Ms. Richardson was in the kitchen when an individual, Edward Greenlaw, entered the house, and Ms. Richardson called the Bangor Police Department to report the break in. *Id.*; *Corrected Compl.* at 6. When police officers inspected the house, they found it unsafe due to the flooding and contacted the City of Bangor Code Enforcement, which condemned the house on August 4, 2023. *Am. Compl.* at 3. AFICS claims adjuster Dexter Greer used this August 4, 2023 date as the date of loss because that is when the house was condemned, and the City of Bangor boarded up the front door; however, Mr. Hansen alleges that the rain event occurred earlier and that he provided the new claims adjuster, Jayne Beezley, with the dates of the rain events. *Id.* at 3-4.

Mr. Hansen cancelled the remainder of his trip and returned to Bangor from Greece late in the evening on August 8, 2023; he filed a claim with Homesite on August 10, 2023. *Id.* at 4; *Corrected Compl.* at 6. Mr. Hansen proceeded with efforts to secure the Property, including "put[ting] a hasp and lock on the hatch in the roof, chang[ing] the door locks, install[ing] a new roof (eliminating the hatch) and remov[ing] all of the carpet and pad as it was soaking wet." *Am. Compl.* at 4. A licensed and certified claims adjuster arrived and prepared a report on the damage to Mr. Hansen's home. *Id.*

5

In response to Mr. Greer's request, Mr. Hansen sent him documents itemizing his expenses from August 3, 2023 through August 24, 2023, totaling $5,593.74, excluding the extra milage for the loss of use of his home. *Id.* Mr. Greer informed Mr. Hansen that another department of AFICS would contact him to arrange temporary housing and provide money for expenses such as dining, gas for traveling to temporary accommodations, and a per diem. *Id.* at 4-5. Theodore Alfonsetti of Covenant Bridge Group contacted the Plaintiff to request information on his expenses, *id.* at 5 (citing *id.*, Attachs. 4-50 (citations corrected)), but a representative of the department described by Mr. Greer did not contact Mr. Hansen, despite his calling multiple times and reaching a voicemail box. *Id.* Mr. Hansen also spoke with "Lilly Arndt, Josh, Savannah, and Shawn Henry who stated the claim was now 'elevated.'" *Id.* Mr. Hansen subsequently received a letter from Mr. Greer indicating he had been attempting to contact Mr. Hansen without success, despite no voicemails or emails being received by Mr. Hansen. *Id.* Eventually, Mr. Hansen discussed with Mr. Greer the requirements set by the City of Bangor, including the required building permit, compliance with the 2022 building code, and Mr. Hansen's difficulties in obtaining a contractor's estimate of the damage. *Id.*

The City of Bangor required a building permit to begin the process of making the house livable again; Mr. Hansen submitted plans to the Bangor Code Enforcement Office and paid for the building permit. *Corrected Compl.* at 7. Mr. Hansen received a building permit on November 27, 2023, though the cost estimate on this permit is an underestimate due to Mr. Hansen's inability to obtain any

6

estimate for repairs at that time. *Am. Compl.* at 5-6. Mr. Hansen was simultaneously attempting to obtain estimates from local contractors; "[a]fter contacting every contractor in the area, [he] was unable to find one that was able to do the work." *Id.* at 6. The City of Bangor also mandates a licensed electrician rewire the entire house; even though the wiring in the home was functioning, the walls containing the wiring had become wet from the rainstorms, posing a fire hazard. *Id.*

Mr. Hansen has received eight letters from Mr. Greer and two from Ms. Beezley from August 14, 2023 through June 25, 2024, indicating they were not denying the claim, but rather investigating. *Id.* (citing *Additional Attachs.*, Attachs. 5-10 (ECF No. 25); *Additional Attachs.* (ECF No. 26); *id.*, Attachs. 1-3 (ECF No. 26) (citations corrected)). Mr. Hansen has requested from Mr. Greer and Ms. Beezley a Sworn Statement in Proof of Loss form, as required under Maine law, numerous times since Ms. Beezley first mentioned that it was required in an email on July 23, 2024. *Id.* at 6-7. On August 2, 2024, Mr. Hansen submitted a notarized statement and related claims documents to Ms. Beezley, but in their last conversation in September 2024, Ms. Beezley stated she was going to get an attorney to draw up a Sworn Statement in Proof of Loss; as of the date of filing the amended complaint, Mr. Hansen had not received the form. *Id.* at 7.

Mr. Hansen received a quote from a licensed electrician for work on his house, which he submitted to AFICS. *Id.* Ms. Beezley then called the Plaintiff, stating she was authorized to pay $48,800 for the claim and wished it to be taken care of. *Corrected Compl.* at 7. Mr. Hansen informed her that the bill for the required

electrical work was going to be $35,000 and he had spent $20,000 to gut the house and $3,000 in dumpster fees, further explaining that there would be expenses relating to flooring and a fire escape required under the City of Bangor's building code. *Id.* She requested Mr. Hansen get an estimate for these additional expenses; he reported he had an estimate from Lee J. Bell for the work and would submit it to AFICS. *Id.* Further, he states he had to obtain a mortgage for $106,000 and had used up his retirement savings to pay for expenses. *Id.*

Mr. Hansen alleges that Ms. Beezley is restarting the investigation; in a recent conversation, she requested the documentation previously provided to Mr. Alfonsetti a year earlier and the letters she has sent to Mr. Hansen are reportedly identical to those received a year earlier from Mr. Greer. *Am. Compl.* at 7. She also denied previously telling Mr. Hansen that she was authorized to pay $48,800 for the claim, stating "[she] could not have set that because it's above [her] limit," and that she could not provide a timeframe for the completion of her investigation. *Id.* Ms. Beezley further stated that the house could not have been flooded because there was not any rain during the week of August 4, 2023, to which Mr. Hansen explained the date Mr. Greer used was the date of the condemnation and the rain event was from July 29 through July 31 of 2023. *Id.* Ms. Beezley further mentioned vandalism, to which Mr. Hansen responded there was none. He informed her that a vagrant had walked into his home uninvited, but nothing was subsequently missing or vandalized. *Id.* at 7-8.

8

## III.    THE MOTION FOR PRELIMINARY INJUNCTION

### A.    Norman Ronnie Hansen, Jr.'s Motion for Preliminary Injunction

In his motion, Mr. Hansen relates the troubles he has experienced since the summer of 2023 when his home was rain damaged, including the repairs he has made on the property. *Pl.'s Mot.* at 1-2. He says that the insurers' failure to respond to his claims constitutes a violation of a section of the Maine Insurance Code, 24-A M.R.S. § 2436, which mandates the payment of interest on overdue payments. *Id.* at 2-3. Mr. Hansen also maintains that the insurers' conduct amounted to unfair claims practices in violation of the Maine Insurance Code. *Id.* at 4-7 (citing 24-A M.R.S. § 2164-D). For relief, Mr. Hansen ends by writing:

> I beseech the court to grant me injunctive relief in the amount of $176,800.98 for loss of use of my home and $125,807.98 for expenditures I have incurred to date.

*Id.* at 8.

### B.    The Defendants' Opposition

In their opposition, the Defendants, Homesite, AFICS, and AFMIC argue that "this Court should reject Plaintiff's Petition in its entirety because it is not actually a motion for injunction and/or is an otherwise inappropriate filing, it is not properly supported, and it fails to meet any of the required criteria when analyzed on the merits." *Defs.' Opp'n* at 1. The Defendants note that they are now in the discovery phase of this lawsuit, *id.* at 1-2, and represent that they "have a very different perspective on the facts in this case and their claims handling practices, and adamantly deny Plaintiff[']s allegations." *Id.* at 3.

The Defendants maintain that Mr. Hansen's motion for injunctive relief is really a complaint, and that he failed to refer to any legal authority to support his motion for injunctive relief. *Id.* at 4-5. The Defendants further argue that Mr. Hansen's filing is not properly supported by evidence and that he has failed to comply with the strictures of Federal Rule of Civil Procedure 65, the civil rule controlling injunctions. *Id.* at 5-6. Reviewing the criteria for the issuance of an injunction, the Defendants maintain that Mr. Hansen has failed to establish any of the necessary criteria for the issuance of an injunction. *Id.* at 7-12.

### C. Norman Ronnie Hansen's Reply

Mr. Hansen's reply was due by October 7, 2025, but he did not file a reply.

## IV. DISCUSSION

Injunctive relief is a complicated niche of law. Unfortunately for Mr. Hansen, his motion for preliminary injunction is fundamentally flawed because he is asking for monetary, not equitable relief. *Pl.'s Mot.* at 8 ("I beseech the court to grant me injunctive relief in the amount of $176,800.98 for loss of use of my home and $125,807.98 for expenditures I have incurred to date"). A court may not grant injunctive relief in the form of a money judgment.

The United States Supreme Court has articulated clear principles governing a court's exercise of its equitable power to grant permanent injunctive relief:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

10

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *accord CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008).  When the second criterion—irreparable harm—has not been satisfied, the movant is not entitled to a preliminary injunction. *Together Employees v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85-86 (1st Cir. 2022). The First Circuit described irreparable harm as "a necessary threshold showing for an award of preliminary injunctive relief." *Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000) (describing irreparable harm as "an essential prerequisite" for injunctive relief).

"Irreparable harm most often exists where a party has no adequate remedy at law." *Id.* (citing *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 221 (1st Cir. 2003)).  Here, Mr. Hansen does not demand equitable relief; he demands monetary compensation, and there is every indication that if he obtained the monetary compensation he is seeking, it would "make [him] whole." *Id.*  Thus, Mr. Hansen's "legal remedy is adequate." *Id.*

This conclusion is compelled by the requirement of irreparable harm to obtain a preliminary injunction.  In arriving at this conclusion, the Court makes no determination as to the merits of Mr. Hansen's claim.  That is a matter for another day.  It is only concluding that he has not demonstrated his entitlement to equitable relief, because his claim for monetary damages is likely to make him whole.

## V.   CONCLUSION

The Court DISMISSES without prejudice Plaintiff Norman Ronnie Hansen Jr.

Petition for Injunctive Relief from Irreparable Harm (ECF No. 61).

SO ORDERED.

> /John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> UNITED STATES DISTRICT JUDGE

Dated this 21st day of October, 2025